IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Joe Davon Davis, #275440, | ) | |
| | ) | Civil Action No. 6:09-3328-RMG-KFM |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER AND** |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| Warden Levern Cohen, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

   The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

   The record reveals that the petitioner is currently confined in the Ridgeland Correctional Institution, of the South Carolina Department of Corrections ("SCDC"), as the result of his Florence County conviction and sentence. The Florence County Grand Jury indicted the petitioner in 2005 for receiving stolen goods in an amount greater than $1000.00 (05-GS-21-734). The Florence County Grand Jury then indicted him at the March 2006 term of court for first-degree burglary and grand larceny (06-GS-21-0444). App. 96-97. Attorney Karen E. Parrott represented him on these charges.

On April 27, 2006, he pleaded guilty to second degree burglary, nonviolent (06-GS-21-0444) and receiving stolen goods (2005-0S-21-734) before the Honorable Michael O. Nettles. Judge Nettles sentenced him to 15 years for second-degree burglary, provided that upon the service of 10 years the balance would be suspended with probation for five years. For receiving stolen goods, Judge Nettles sentenced the petitioner to five years imprisonment, provided that the balance would be suspended upon service of three years, with probation for two years. The sentences were imposed concurrently, as recommended by the State.[1] App. 3-24; 89.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Aileen P. Clare represented him on appeal in the South Carolina Court of Appeals. Ms. Clare filed a Final *Anders* Brief of Appellant[2] on the petitioner's behalf and petitioned to be relieved as counsel. The only question presented in the *Anders* brief was stated as follows:

> Did the lower court improperly consider uncharged conduct in sentencing appellant?

Final *Anders* Brief of Appellant, p. 3. However, Ms. Claire sent a letter to the South Carolina Court of Appeals on April 11, 2007, asking the court to enter an order dismissing the appeal because the petitioner had made a knowing and voluntary decision to abandon his appeal, after counsel had advised him of the consequences of his action. Ms. Claire also enclosed an affidavit from the petitioner indicating his desire to abandon his appeal.

---

[1]Counsel felt that this deal was very advantageous to the petitioner: "I don't think that you're ever going to get much more assistance than burglary first violent 15 to life down to burglary second nonviolent so that it's already two standards down. And you got a grand larceny down to a receiving stolen goods so that took him out of being the person who actually stole that." App. 69.

[2]*See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988). *Johnson* sets forth the procedures for counsel to follow when filing meritless appeals in state PCR cases pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Contra Pennsylvania v. Finley*, 481 U.S. 551 (1987) (prisoner, who had no equal protection or due process right to appointed counsel in postconviction proceedings, also had no right to insist on *Anders* procedures for withdrawal of appointed counsel when collateral counsel determined direct appeal was frivolous).

On April 13, 2007, the South Carolina Court of Appeals filed an "Order Of Dismissal And Remittitur," in which it dismissed the appeal and remitted the case to the Florence County Clerk of Court on April 23, 2007.

The petitioner filed a *pro se* post-conviction relief ("PCR") application (07-CP-21-149) on January 25, 2007. *Contra* Rule 71.1(b), SCRCP ("An application for post-conviction relief cannot be made while an appeal from the conviction or sentence is pending or during the time in which an appeal may be perfected"); *Al-Shabazz v. State*, 527 S.E.2d 742, 747 (S.C. 2000) ("The applicant may not bring a PCR action while a direct appeal is pending. Rule 71.1(b), SCRCP"). He alleged the following grounds for relief in his application:

  (1) Ineffective assistance of counsel, in that counsel:

  (a) Failed to investigate facts or law,

  (b) Failed to timely move to suppress evidence, and

  (c) Failed to interview witnesses.

App. 26-32. The State filed its Return on April 13, 2007. App. 33-37.

The Honorable Thomas Anthony Russo held an evidentiary hearing into the matter at the Florence County Courthouse on December 12, 2007. The petitioner was present at the hearing and represented by attorney Robert Rushing. Assistant Attorney General Michelle J. Parsons represented the State. The petitioner testified on his own behalf, while the State presented the testimony of trial counsel, Ms. Parrott. App. 38-86. Judge Russo denied relief and dismissed the application with prejudice in an Order of Dismissal filed on February 15, 2008. Judge Russo addressed the petitioner's claims that trial counsel was ineffective because she failed to (1) argue that the petitioner was merely present at the scene of the crime and was not an active participant; (2) investigate the facts surrounding the case and the process by which the petitioner was identified as the

perpetrator of the crime; (3) ascertain whether the confidential informant was reliable; and (4) object to the prosecution's false statements in the factual proffer made to support the guilty plea. Judge Russo also addressed the petitioner's claim that the guilty plea was involuntary. App. 88-95.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Elizabeth A. Franklin-Best represented him in collateral appellate proceedings. On November 19, 2008, Ms. Franklin-Best filed a *Johnson* Petition for Writ of Certiorari[3] on the petitioner's behalf and petitioned to be relieved as counsel. The only question presented in the *Johnson* Petition was stated as follows:

> Was Davis' plea knowingly and voluntarily entered when he did not review all of the discovery that he believes was available in his case?

*Johnson* Petition for Writ of Certiorari at p. 2.

The petitioner filed a *pro se* response, which the South Carolina Supreme Court received on February 18, 2008. He alleged that his guilty plea was not knowingly and voluntarily entered for the following reasons:

> During the pcr hearing, Davis Informed The Court That in His rule 5 Rule, He could not find any Information that Identified him As the perpetrator of crime. Please View pcr Transcript page 43 line[s] 1-11.

> There Was also discrepancies in the incident reports, supplemental report, Warrants. These discrepancies state that officer McDaniel arrived at scene and secure[d] the crime scene. He Never state anything about collecting evidence! But officer Nettles stated that entry was gain[ed] by using a shovel to Break a sliding glass door. The rule 5 doesn't show any

---

[3] *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988). *Johnson* sets forth the procedures for counsel to follow when filing meritless appeals in state PCR cases pursuant to *Anders*, *supra*. *Contra Pennsylvania v. Finley*, 481 U.S. 551 (1987) (prisoner, who had no equal protection or due process right to appointed counsel in post-conviction proceedings, also had no right to insist on *Anders* procedures for withdrawal of appointed counsel when collateral counsel determined direct appeal was frivolous).

4

evidence recovered. Please View pcr Transcript page 45 line 6 to page 47 line 2.

There was no statement from the confidential Informant. Clearly the CI does have a statement in rule 5. Nor did he [give] any first hand knowledge of the crime. Arrest Warrant state[s] that [I] was Identified to the Exclusion of all others, and the supplemental report state[s] the CI gave this Information. Please View pcr Transcript page 47 line 3 to page 48 line[s] 7-19.

The prosecution made a statement that was not true [and] guilty plea counsel let prosecution['s] statement be enter[ed] in the record when she should have object[ed] to statement. Also counsel let victim make a statement about evidence, that was clearly stating that [the] prosecution['s] statement was not true[. C]ounsel still fail[ed] to object and withdraw my plea.

Please View plea Transcript page 7 line 7-14, also please View Transcript page 16 line[s] 4-10.

Two major pieces of evidence was no[t] in Rule 5, A Box and [a] shovel. There isn't any evidence log in sheet, No pictures of these Items, These Items [were] Never recov[er]ed. Clearly My Counsel Competen[ce] wasn't of a professional standard. [C]ounsel fail[ed] to advise Me about these Missing [pieces of] evidence and that my factual basis of My plea was set on these Items that are not true. The rule 5 contain anything about these Items.

[P]lease View Transcript page 65 line[s] 6-18.

Counsel agreed in plea hearing that [I] could be found guilty and Base[d] on her Investigation I could be found guilty Beyond a doubt. Counsel agree[d] to be a [competent] Attorney To The Courts. [P]lease View plea Transcript page 4 lines 18-25.

Counsel clearly state[d] that she did not Investigate. Counsel fell below the professional standard and if counsel would have investigated the proceeding would have been different. Please view pcr Transcript page 60 line 15- page 74 line 25.

Defendant told counsel that he wanted to go to [trial] days before this plea[. C]learly counsel received the request, but she [advised] me to [plead guilty]. [P]lease View pcr Transcript page 49 Line 14 to page 51 line 7.

The South Carolina Supreme Court filed an Order denying certiorari and granting counsel's petition to be relieved on June 24, 2009. It sent the Remittitur to the Florence County Clerk of Court on July 10, 2009.

In his *pro se* petition now before this court, the petitioner raises the following allegations:

> **GROUND ONE**: Counsel is ineffective for failing to investigate facts of law. (Sic).

> **SUPPORTING FACTS**: I was arrested on July 21, 2005 for burglary first degree. Counsel received Rule 5 which contain[ed] arrest warrant, Indictment, Incident report, Nothing in Rule 5 stated how I [was] identified as the perpetrator of crime, the arrest warrant stated [I] was identified to the exclusion of all others, as in DNA, fingerprints, eyewitnesses or photo line up. Counsel advise[d] me to plea[d] guilty to burglary first degree without finding the facts of how [I] was identified as the perpetrator. Clearly counsel is ineffective for failing to investigate facts In case and advising me to plea[d] guilty to charge.

> **GROUND TWO**: Counsel is ineffective for failing to investigate facts of law. (Sic).

> **SUPPORTING FACTS**: Counsel failed to investigate discrepancies in the incident report from officer McDaniel and Inv. Chad Nettles. The discrepancies that [I] am referring to are found in ofc. McDaniel['s] report, in which he stated that he arrived at and spoke with victim and took photos. Ofc. McDaniel never stated in his report that he collected any evidence beside photographing the crime scene. However, in the supplemental report submitted by Inv. Nettles in which he stated that entry was gained by using a shovel. The discrepance is clear[. W]here did the shovel come from and where is it now[?] There is no documentation that show[s] a shovel being logged into.

> **GROUND THREE**: Counsel is ineffective for failing to investigate facts of law. (Sic).

> **SUPPORTING FACTS**: Counsel was ineffective for fail[ing] to Investigate [whether] or not the Magistrate determined the reliability of the CI, by applying the [rigid] 'two pronged test established by the US Supreme Court, the information that the CI provided turned out to be unreliable. The CI told the police

6

where evidence could be recovered. However, then the police went to where the CI told them to go. No evidence was recovered. The CI merely told police where evidence could be found, the CI did not say that [I] committed the crime. Counsel didn't take any of this into account before advis[ing] me to [enter] a guilty plea.

**GROUND FOUR**: Counsel is ineffective for failing to investigate facts of law. (Sic).

**SUPPORTING FACTS**: Counsel was ineffective at plea for [letting the] prosecution make false statement[s] about evidence. [The] prosecution stated "The defendant was eventually arrested for that and He did give a statement. Actually How they linked this defendant, Chad Nettles with the sheriff['s] office had a reliable Confidential Informant that provided some information that [led] to the discovery of the wooden box that had been taken, the bar was very unique and it was identified as the victim[']s and which [led] to the defendant" I feel that counsel should have objected to these statement[s], because [I] never made a statement regarding this crime and no wooden Jewelry box was ever[] recovered. There is no documentation of either this statement or the Wooden Jewelry Box. As further evidence that the statement regarding the Jewelry Box is false, The Victim [L]inda Stone stated at [the] plea Hearing 'We were not able to recover any of our items. I believe no Competent Attorney would have allowed these clearly false statement[s] To Be Made, clearly Counsel is ineffective for failing to object to these statement[s] made at plea hearing By prosecution which was false also for letting the victim make the statement and not objecting to it.

On March 23, 2010, the respondent filed a motion for summary judgment. By order filed March 24, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 29, 2010, the petitioner filed his opposition to the motion for summary judgment, as well as a motion for leave to conduct discovery.

## APPLICABLE LAW AND ANALYSIS

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant

precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo. See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).


### Ground One

The petitioner first alleges that counsel was ineffective for advising him to plead guilty without first adequately investigating the facts surrounding the case and the process by which he was identified as the perpetrator of the burglary. The petitioner's original charges included grand larceny and burglary in the first degree, but trial counsel was able to negotiate a plea to receiving stolen goods greater than $1,000.00 and burglary in the second degree, non-violent. App. 2-3. As part of the State's proffer for the burglary charge, the Deputy Assistant Solicitor stated:

> In regards to the burglary incident, Your Honor, that involved the home of Mr. and Mrs. Stone. Mr. and Mrs. Stone are here in the courtroom today. Their home was broken into on June 21 of 2005. And their home was entered by breaking out a back sliding door with a shovel. Once the persons were inside, they carried a way a number of firearms, jewelry, change, a Dell[] computer, also a hand wooden handmade box that contained some valuables in it. The petitioner was arrested, as the result of information that the confidential informant provided on this charge and gave a statement.

App. 6-7.

In an effort to mitigate the petitioner's culpability on the burglary charge, trial counsel stated at the guilty plea:

> With regards to second charge, Your Honor, as he's already stated for the burglary he was there. He states to me and has stated now to them, that he didn't actually go into the house. Of

9

course, I've explained to him the hand of one is the hand of all. And if you're just simply present, if you're merely present, it's a little bit different, but that if you understand what's going on, that you have just as much culpability in a matter as what the person who's actually stealing the goods and maybe actively involved in breaking something or you just going into the house. He understands all of this, Your Honor, and has told me multiple times that he wanted to plead guilty. He has been down there in jail begging to come up here[. He] has left me messages, so often to where at one point I understood what he wanted. I just couldn't get him in here yet. I wanted to get him in so he could go ahead and plead, but it just wasn't working out as far as what Mrs. Parr's personal scheduling was, what my scheduling was, what the Court scheduling was, so he has been begging to come to court to try to deal with this and ask for whatever mercy he can get from the Court. And sometimes that just simply is a matter of court scheduling. I understand that maybe not everybody involved in the court doing this job they don't understand that, that is something I wish these victims would understand. He is very sorry and he plans to apologize. He's asked me if he can apologize to the victim's today for his role in this matter.

App. 18-19.

At the time of his plea, the petitioner explained his decision to plead guilty:

I['d] like to apologize to both victims. I did receive the goods. I did pawn the goods. In the [burglary] case, I was present. The reason I am pleading guilty to that burglary instead of taking it to trial is because I was present. I did not physically enter the home. I feel this is the right thing to do. I understand that the home was violated. Their privacy was violated. And I'm quite sure my mother or my father would be very upset. I'm quite sure you be very upset if someone entered your home and you had to deal with that stress level. I am very sorry. If I am -- the Court [will] have leniency on me, I would not even be in the Williamsburg County area. I will be transferring my probation or whatever you give me to Columbia, South Carolina. I will be moving back to the [S]tate of Florida. That's up under the Court's discretion, but I do share deep sympathy.

App. 21.

At the PCR hearing, however, he testified that "after I was in prison I read over the Rule 5 [discovery responses]. I discovered that there was not one piece of evidence that

10

identified me as the perpetrator in this [burglary]." The petitioner argued that trial counsel would have discovered this if she had investigated properly and that she was ineffective for her failure to advise him to enter a guilty plea without doing so. He also introduced the incident report and supplemental incident report as exhibits. Resp. m.s.j., attach. 13, PCR Tr. 5-7; attach. 12, pet. ex. 2.

Trial counsel, Karen Parrott, testified that she represented the petitioner on two charges. He was originally arrested on "a grand larceny charge that then got changed to the receiving stolen goods plea." After he "bonded out" on this charge, he was arrested on the charge of burglary in the first degree. Counsel received responses to her discovery requests under *Brady v. Maryland*, 373 U.S. 83 (1963) and Rule 5, SCRCrim.P, for the receiving stolen goods offense on July 27, 2005. However, the petitioner was not indicted on the first degree burglary charge until March 9, 2006, and she would not have received information of that charge until "after that date or right around that date." She sent the petitioner "a copy of his Rule 5 or had my secretary send him a copy of his Rule 5 on March 8th of 2006." App. 60-61.

Counsel spent "[q]uite a bit" of time reviewing the disclosed material. Before the plea, the petitioner wrote counsel a number of times, and he left her a number of voice mail messages indicating that he wanted to plead guilty. Moreover, in a letter dated March 18, 2006, he told her ""I got the papers that you sent me. On my indictment it states I'm being charged with grand larceny and burglary first. I know about the burglary first." Also, he told counsel that the confidential informant ("CI") referenced in the disclosed notes was a Derrick Wright and that Wright had "a long record of burglary." He further told her that, contrary to the State's information, he did not have any prior burglary convictions, and he stated, "I'm ready to go to court and plead." App. 62-63.

Counsel testified that she did not interview Mr. Wright, nor was a statement by him produced. However, the petitioner had indicated his desire to plead guilty "at least

11

30 times," in writing or by phone, and he repeatedly wanted to know why she was stopping him from pleading guilty and why he was staying in jail. Also, he provided her with some information when she and the investigator first met with him. "[P]art of the information that he gave me was just flat out wrong." So, counsel did not see that it was necessary for her "to keep looking behind things." Because the petitioner repeatedly indicated his strong desire to plead guilty, she also did not take a number of actions that she would have taken if the case was going to trial. For example, she did not make any effort to determine whether police had a shovel that was supposedly used; she did not review the physical evidence in the evidence room; and she did not review a CD of photographs taken in the case. Rather, she would have told him that the State had produced the photographs, "that I have this and if you want to look at it, if you want me to look at it then we will do so, but you're telling me you want to plead guilty, you've told me all about this and you've talked with your investigator and given him a statement about what has happened so I'm not going to look at every piece of information like that that's given to me." App. 63-66, 69, 74.

Counsel felt that she had "spent a sufficient amount of time with [the petitioner]." She kept "him abreast of the discovery in a timely manner as it became available." Additionally, she spoke with Investigator Nettles and Investigator Hester; she spoke to the petitioner's mother; she spoke to someone with the school district; she talked with his brother; and she met with her investigator. She also spent time reviewing the petitioner's various voice mail messages. App. 74-75. Although the petitioner did send a letter and leave counsel some messages in which he indicated that he wanted to go to trial (*see, e.g.*, resp. m.s.j., attach. 12, pet. ex. 3), he would simply ask her "to get my brother and make sure that he's there for my guilty plea, or . . . that sort of thing" whenever counsel spoke to him. Again, she stated that he indicated that he wanted to plead guilty for multiple reasons. He likewise told her who was involved in the crimes. According to counsel, if the petitioner had indicated that he wanted a trial even during the plea, it would have been

12

stopped. The decision to plead guilty was the petitioner's. As counsel explained, "It's always the client's. They answer the questions." App. 66-67, 76-78.

When asked how she explained "mere presence" to the petitioner, counsel testified that "when he pleads guilty to burglary first . . .or burglary second, burglary third, any of those things, it's because he has some part in it beyond mere presence." If the petitioner wanted "to attach himself to" a defense of mere presence, "that is then a jury call [and] the jury would be trying him on a case of burglary first." Further, even if he wanted to assert that he was "outside while someone is inside doing the act, even if he wants to go with that, you're the lookout, the case law is firmly settled that being a lookout is just as guilty as the person who goes inside because it's another integral part as to how a burglary can occur." Counsel understood the operative elements of second degree burglary to include "entering into a residence in this case without consent with the intent to commit a crime. Or, as the case may be, being on the outside of it while someone else does it so that they can do it." Counsel was sure they had discussed the question of the petitioner's presence. App. 72-73.

Counsel testified at the PCR hearing that a possible defense on mere presence "was something that would have been discussed, but that's always the client's decision as to whether or not they wish to go forward on that." Also, when her clients tell her that "they're ready to plea and they stand up there, we've gone over what their rights are before we ever stand up here. They know . . . the questions that the judge is going to be asking either because of having sat in court and watched it or by having been reviewed both prior to their standing up." The petitioner "was fully prepared and he answered those questions as he stated just even today voluntarily." App. 75-76.

The PCR judge denied post-conviction relief. In ruling from the bench, the PCR judge found that the petitioner's guilty plea was freely and voluntarily entered:

In going through these papers, going through the transcript and hearing the testimony and evidence that's been presented, Judge Nettles was pretty thorough in his colloquy with regards to the plea. There's no indication that there was anything . . . at the time this plea was entered into that would indicate that the plea was not voluntary. On several occasions throughout the course of the plea Mr. Davis was given an opportunity to address the Court with regards to the satisfaction of his attorney, with regards to the voluntariness of his plea. As a matter of fact, at one point I think it was . . . after Ms. Parr had given the facts associated with the plea and the judge was asking Mr. Davis if he agreed with those facts as they were presented. He indicated that he did. The judge actually went a little further. Well, he says, do you agree with those facts. Mr. Davis indicates yes, sir. The Court then says, are you in fact guilty of what they are accusing you of doing. And then Mr. Davis does explain that, yes, I am guilty of receiving stolen goods and with regards to the burglary I was there when the crime happened. And the judge went a little further. And . . . they talked about being just simply being present or having knowledge of what was going on. And Mr. Davis responded to the Court indicating his level of involvement that he did not go in but that he understood that it was occurring and he was present and with those who were committing the offense. The judge then goes further and he says, you understand that you could receive up to 15 years on the burglary offense. Mr. Davis indicates yes. The Court says, all right, do you still wish to plead guilty; he indicates yes, sir. And then the Court goes further and says, all right, do you understand that you do not have to plead guilty, that you could exercise your right to a jury trial, you understand that? Mr. Davis says, yes, sir, I do. The Court says, throughout the jury trial process no one could require that you take the stand, you understand that. He indicated that he did understand that. . . . And then . . . of course the judge hears from the victims. He hears from Ms. Parrott who speaks on behalf of Mr. Davis, and then he says, okay, Mr. Davis, I will be happy to hear from you. And at that time Mr. Davis begins with he'd like to apologize to the victims and then he goes through his addressing the Court. And at no time in addressing the Court does he ever deny his involvement in this. As a matter of fact, he goes further to explain it. There's just absolutely nothing in this record that would indicate that this plea was anything other than voluntarily entered into and that it was Mr. Davis' decision to do so.

App. 83-84.

14

The PCR judge further found that the petitioner had reviewed "documents, he's reviewed records," sometime after his guilty plea. "However, they were records which he had at the time he entered the plea," and the PCR judge did not find that this rendered his plea involuntary. App. 85. Then, the PCR judge made the following findings as to the current ineffectiveness claim:

> He does allege that was not investigated by Ms. Parrott. Was it investigated by Ms. Parrott to the extent if she was preparing this case for trial, no, but the reason for that is that apparently from the testimony and from the correspondence when an attorney is constantly being told that their client wishes to work out a plea, to enter a plea, is going to plead, then gets upset because they're not able to get into court and plead that attorney then is not in a mode of preparing for trial; they're in a mode for preparing for plea.

> It does appear from the testimony and from what I've heard that Ms. Parrott did look into these matters. Did she go down into the evidence room and go through the evidence, no, but it does appear that she investigated notes, she talked to investigators in the case. And again, [she] passed all this information on to Mr. Davis, talked with Mr. Davis. There was no indication of anything other than he wished to plead. Now I do absolutely give consideration to the letter or the memo that Mr. Davis sent to Ms. Parrott two days prior to the plea raising serious concerns over the evidence, that he wished to go to trial. And I have no idea and it hasn't been put before the Court what the conversation was from that date to the date of the plea, but then I refer back to the evidence in the record, and that is, the plea itself. During this case -- and I appreciate Judge Nettles for doing this because often times many courts don't do that. But he had madam clerk place the defendant under oath and that oath is to tell the truth. Mr. Davis was under oath, and then he proceeded to answer questions and there's just nothing in this record to indicate that this plea was anything other than voluntarily entered into, knowingly entered into, and of his own accord and own decision. He had opportunities to address the Court with any concerns that he may have. And when he had that opportunity to address the Court he simply came across as being very contrite, very remorseful for his conduct, very apologetic to the victims for his conduct. But at no time did he indicate to the Court that his plea was anything other than a voluntary plea. And there's nothing in this record that would

> support the allegations in the application, and therefore, I'm
> going to deny the application for post-conviction.

App. 84-86.

In the Order of Dismissal, the PCR judge first summarized the testimony from

the petitioner and trial counsel. App. 91. He found as follows:

> This Court finds that the plea was voluntary. The Applicant had
> an opportunity to address the court with regard to whether or
> not he was satisfied with his attorney, whether he agreed with
> the facts, and whether the plea was voluntary. The trial court
> also reminded the Applicant of his right to trial by jury. The
> Applicant addressed the court during his guilty plea and did not
> deny the charges, but explained them. Moreover, trial counsel
> completed a satisfactory investigation and kept the Applicant
> abreast of the discovery in a timely manner. As a result, there
> is nothing in the record to indicate that trial was ineffective or
> that the plea was involuntary.

App. 91-92.

Claims of ineffective assistance of counsel are governed by the two-part test

established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must

show that counsel's performance was deficient." *Id*. at 687. To prove deficiency, the

petitioner "must show that counsel's representation fell below an objective standard of

reasonableness." *Id*. at 688. Second, the petitioner must show that the deficient

performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

*Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether

counsel's performance was deficient before examining the prejudice suffered by the

defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should

be followed." *Id*. at 697. Review of counsel's performance is "highly deferential." *Id*. at

689. With respect to guilty plea counsel, in order to satisfy the prejudice requirement, a

petitioner must show that there is a reasonable probability that, but for counsel's alleged

16

errors, he would not have pleaded guilty and would have insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 59  (1985).

Applying these criteria to the petitioner's case, it is clear that the PCR judge's rejection of the petitioner's claim was neither "contrary to" nor an "unreasonable application of *Hill* and *Strickland* under § 2254(d)(1).  To the contrary, the petitioner explained to his counsel the identity of the CI in this case, and he admitted his guilt.  Thus, prior to entering his guilty plea, he was aware of the facts surrounding how he was identified as a participant in the burglary.  Moreover, he repeatedly indicated a desire to her to plead guilty, and he displayed frustration with counsel over her failure to arrange a guilty plea sooner.  Although he did indicate a desire to have a jury trial in his letter to counsel and in a message(s), he would only talk of matters related to a guilty plea whenever counsel spoke to him.

As argued by the respondent, that counsel could have conducted a more thorough investigation that might have borne fruit does not establish ineffectiveness.  *See Burger v. Kemp*, 483 U.S. 776, 794 (1987) ("The record at the habeas corpus hearing does suggest that [the attorney] could well have made a more thorough investigation than he did. Nevertheless, in considering claims of ineffective assistance of counsel, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'") (citations omitted).  Given the petitioner's version of what had occurred and his desire to plead guilty, counsel's investigation was constitutionally adequate, even though she admittedly would have done a more thorough investigation if the petitioner had wanted a jury trial.  *Id.  See also Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) ("Tactical or reasonable professional judgments are not deficient but a failure to investigate a material matter due to inattention may be deficient"); *Stevens v. Delaware Correctional Center*, 295 F.3d 361, 373 (3rd Cir. 2002) (counsel does not have to investigate matters at odds with what client has said and what victim will testify).

The PCR judge found that counsel had entered into plea negotiations with the Solicitor's Office and that she "was successful in getting the charges reduced from first-degree burglary and grand larceny to second-degree burglary, nonviolent, and receiving stolen goods." The PCR judge further found that counsel had "fully discussed the terms and consequences of the plea with [the petitioner] and explained to [the petitioner] the right to proceed with a jury trial and rights pertaining thereto and the possible consequences depending on the option [the petitioner] elected to pursue." App. 93. These findings are not objectively unreasonable under § 2254(d)(2). Rather they are supported by trial counsel's testimony (App. 74-75) and are entitled to a presumption of correctness under § 2254(e)(1). Counsel and her investigator also discussed the case with the petitioner. Counsel personally spoke with the two investigators in the case; she spoke to the petitioner's mother; she spoke to someone with the school district; she talked with his brother; and she met with her investigator. She likewise spent time reviewing his various voice mail messages. App. 74-75.

Further, as correctly noted by the PCR judge, both in his ruling from the bench (App. 83-86) and in the Order of Dismissal (App. 91-94), the petitioner admitted his guilt at the plea and explained his involvement; he expressed satisfaction with counsel's representation of him; he agreed with the facts as proffered by the State; he swore that he understood his right to trial by jury, and he swore that his guilty plea was voluntary. App. 5-13. The petitioner has not shown anything that would overcome the "strong presumption of veracity" carried by his statements at the guilty plea hearing. *See United States v. Morrow*, 914 F.2d 608, 614 (4th Cir. 1990). Because a guilty plea is a solemn, judicial admission of the truth of the charges against an individual, a criminal inmate's right to contest the validity of such a plea is usually, but not invariably, foreclosed. *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). A defendant's representations at the plea, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any

subsequent collateral proceedings." *Id.* at 74. Therefore, statements made during a guilty plea should be considered conclusive unless a criminal inmate presents reasons why he should be allowed to depart from the truth of his statements. *Edmonds v. Lewis*, 546 F.2d 566, 568 (4th Cir. 1976). The petitioner has not done so.

Finally, the petitioner did not present any evidence demonstrating prejudice because he did not establish that a reasonable investigation would have uncovered evidence suggesting the CI misidentified him. *See Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (when challenging the adequacy of counsel's investigation, defendant must show what an "adequate" investigation would have uncovered). Based upon the foregoing, this ground for relief fails.

### Ground Two

The petitioner's second allegation is that trial counsel was ineffective because she failed to investigate discrepancies in the incident report from Investigator McDaniel and the supplemental report submitted by Investigator Chad Nettles. Resp. m.s.j., attach. 12, pet. ex. 2. Specifically, he complains because Investigator McDaniel's report does not indicate that he collected any evidence besides photographing the crime scene. However, Investigator Nettles' supplemental report "stated that entry was gained by using a shovel." *Id.* The shovel is also referenced on the arrest warrant. *Id.*, pet. ex. 1. The respondent argues that the state court's rejection of the petitioner's claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent. § 2254(d)(1). This court agrees.

The burglary charge involved the home of Mr. and Mrs. Stone, whose home was broken into on June 21, 2005. According to the Assistant Solicitor's colloquy at the guilty plea, the "home was entered by breaking out a back sliding door with a shovel. Once the persons were inside, they carried a way a number of firearms, jewelry, change, a Dell[]

19

computer, also a hand wooden handmade box that contained some valuables in it." The petitioner was arrested, as the result of information that the CI provided. App. 6-7. The petitioner agreed that these facts were correct. App. 8-9.

The petitioner testified consistent with the current allegation at the PCR hearing. App. 45. He added that "[t]here is no evidence log in sheets [or] nothing that show[s] that a shovel tested for glass paraphernalia, how do they know this shovel was used in this crime." App. 46-47; Resp. m.s.j., attach. 13, PCR Tr. 8-9. Had counsel properly investigated the issue, the petitioner maintained that he would have insisted on going to trial. App. 53-54.

Trial counsel testified that because of the petitioner's admission of guilt to her and his repeated indications that he wanted to plead guilty to the burglary charge, she did not make any effort to determine whether police had a shovel that was supposedly used in the crime. She also did not view the evidence; nor did she take a number of steps to investigate the case in the same manner that she would have if the petitioner had wanted a jury trial. App. 63-66, 73-74.

The PCR judge denied this allegation as part of his determination that counsel was not ineffective in her investigation. *See* App. 83-86, 91-94. The petitioner cannot show either deficient performance or resulting prejudice. First, the petitioner explained to his counsel the identity of the CI in this case, and he admitted his guilt to counsel. He also explained his role in the offense to her, and he understood counsel's explanation of accomplice liability. Thus, he was aware of the facts surrounding how the State theorized that entry into the residence was gained before he entered his guilty plea to the burglary charge. Moreover, he repeatedly indicated a desire to plead guilty to her, and he displayed frustration with counsel over her failure to arrange a guilty plea sooner. Although he did indicate a desire to have a jury trial in his letter to counsel and in a message(s), he would talk only of matters related to a guilty plea whenever counsel spoke to him. Given his

version of what had occurred and his desire to plead guilty, counsel's investigation was constitutionally adequate, even though she admittedly would have done a more thorough investigation if the petitioner had wanted a jury trial.

Further, the petitioner admitted his guilt at the plea and explained his involvement; he expressed satisfaction with counsel's representation of him; he agreed with the facts as proffered by the State; he swore that he understood his right to trial by jury, and he swore that his guilty plea was voluntary. The petitioner's subsequent allegation and his PCR testimony were insufficient to overcome the "formidable barrier" of his sworn representations, and the findings made by the judge accepting the plea. App. 5-13. *See Allison*, 431 U.S. at 73-74. Particularly in light of the fact that the petitioner's admissions to the trial court were sworn, it was proper for the PCR judge to rely upon them in denying relief.

Second, and despite his PCR testimony that he would have insisted on going to trial if this matter had been properly investigated, the petitioner did not present any evidence demonstrating prejudice. In particular, it was not objectively unreasonable for the PCR judge to reject his PCR testimony. Aside from the "formidable barrier" of his sworn representations at the guilty plea, *id.*, how entry to the house was ultimately gained was irrelevant to the petitioner's guilt,[4] and he did not establish that a reasonable investigation would have uncovered evidence suggesting entry by his fellow accomplice(s) was not gained in that manner. *See Bassette*, 915 F.2d at 940-41 (when challenging the adequacy

---

[4]South Carolina law does not recognize a distinction between guilt under a theory of accomplice liability and guilt as a principal. *See State v. Dickman*, 534 S.E.2d 268, 269 (S.C. 2000) ("It is well-settled that a defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense.") (citations omitted). Assuming that the petitioner never entered the residence, the manner by which entry was gained by those entering the Stone's residence was not of any real relevance since the petitioner would still be guilty because he aided and abetted them as an accomplice, i.e., he acted as a lookout.

of counsel's investigation, defendant must show what an "adequate" investigation would have uncovered).  Thus, the petitioner is not entitled to relief based upon this allegation.

**Ground Three**

The petitioner further maintains that counsel was ineffective because she failed to investigate whether or not the magistrate properly "determined the reliability of the CI, by applying the [rigid] two pronged test established by the US Supreme Court."  Pet. at 5.  He contends that the information that the CI provided to law enforcement ultimately proved to be unreliable because, when police went to the location where the CI told them the evidence could be recovered, no evidence was recovered.  The respondent argues that the state court's rejection of the petitioner's claim was not "contrary to" and did not involve an "unreasonable application of" clearly established United States Supreme Court precedent.  § 2254(d)(1).  This court agrees.

The petitioner testified at the PCR hearing that he felt that counsel was ineffective because she did not investigate whether or not the magistrate had determined the CI's reliability as required by the Supreme Court.  He argued the information that the CI provided to police "turned out to be . . unreliable."  The petitioner further contended that when the police went to the location where the CI told police evidence could be recovered, they did not recover any evidence.  He argued that " the CI merely . . . told the police where evidence could be found.  The CI did not say that I committed the crime."  He claimed counsel "did not take any of this in account before advising me to enter a guilty plea."  App. 42.

The petitioner also introduced as an exhibit a "request form" that he wrote to counsel on April 25, 2006.  *See* resp. m.s.j., attach. 12, pet. ex. 3.  In this form, he asked counsel to "please file a motion to suppress all evidence in my case: Warrants, Search warrants, Motion of discovery, etc." because he did not feel that there was sufficient

22

evidence "to support a conviction of burglary first." He added that "the court has no duty to weigh the evidence or review witness credibility. It is the jury['s] role to resolve this conflict in weigh[ing] the evidence and judg[ing] the credibility of the witness. Please make sure that all the motions are filed, also another bond hearing." He further stated, "I feel it is in my Best [interest] to pick a jury [trial] for my case. There are a lot of questions I have and loop holes that I found." *Id.*; *see also* App. 49-51.

As noted above, counsel testified that the petitioner did leave counsel a few messages in which he indicated that he wanted to go to trial, such as what he expressed in the request form sent to counsel a few days before the plea. However, he would simply ask her "to get my brother and make sure that he's there for my guilty plea, or . . . that sort of thing" whenever counsel spoke to him. Additionally, he indicated that he wanted to plead guilty for multiple reasons. He likewise told her who was involved in the crimes. According to counsel, if the petitioner had indicated that he wanted a trial even during the plea, it would have been stopped because the decision to plead guilty was the petitioner's. App. 66-67; 76-78.

Counsel also testified that she does not typically make motions to suppress evidence on the day of the guilty plea because there is a risk of "alienating every person who is involved to the point [or] if you have any kind of offer you risk losing it because they don't have to make offers to us and we all know that." App. 77-78. She further explained:

> But especially when I'm going from a 15 to life plus another sentence on a grand larceny down to a 15 possible that's not even the violent side of it that's now the nonviolent side of it, and they've gotten the victims up to the courtroom and who are waiting to be heard and the judge is always going to allow them to be heard, I risk making everyone mad out of all of that. And to me, I don't see -- I don't see the need to do it that way. If there - as I said, if there's a discrepancy or some distinction that needs to be made I think you can do it in a much softer manner that then it kind of paves the way for it to be where you've made the distinction if there was a need for one but you haven't made everyone mad as part of it and made it where the judge isn't

even going to take the plea because of the victims being so enraged and that's always a gamble.

App. 78.

Again, the current allegation was denied by the state PCR judge as part of his findings that the petitioner "simply made [his] allegations without offering actual evidence that counsel's performance was ineffective. In addition, in the event that the Applicant could prove his allegations against counsel, he failed to prove that any such failures negatively impacted his case." App. 93. The PCR judge further found:

> [T]rial counsel conferred with the Applicant on numerous occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges, the maximum penalties, Applicant's version of the facts, and possible defenses or lack thereof. Counsel investigated this matter and shared the results of her investigation with the Applicant. This Court finds counsel entered into plea negotiations with the Solicitor's Office and was successful in getting the charges reduced from first-degree burglary and grand larceny to second-degree burglary, nonviolent, and receiving stolen goods. Counsel fully discussed the terms and consequences of the plea with the Applicant and explained to the Applicant the right to proceed with a jury trial and rights pertaining thereto and the possible consequences depending on the option the Applicant elected to pursue. The Applicant was thoroughly questioned by the plea judge and admitted that he was satisfied with trial counsel's representation and he answered all the questions of his own accord and satisfaction.

App. 93. Finally, the PCR judge's rejection of relief relied upon the petitioner's sworn admission and explanation of his guilt, his professed satisfaction with counsel's representation and his other sworn admissions, as well as his failure to indicate the plea was anything other than voluntary when given full opportunity to do so. App. 91-94.

As argued by the respondent, trial counsel's testimony supports the conclusion that she made a strategic decision – that was reasonable under *Strickland* and *Hill* – not to make a suppression motion at the time of the petitioner's plea based upon (1) the petitioner's repeated indications to her that he wanted to plead guilty, and his

24

reassertion of his desire to plead guilty whenever she spoke to him abut a supposed desire to have a jury trial; (2) the favorable plea bargain resulting in a reduction of the offense, the length of the potential sentence, and removing the possibility of receiving a sentence for a violent crime; (3) the risk of losing the favorable plea bargain and forcing the case to trial; and (4) her belief that if there was any "discrepancy or . . . distinction that needs to be made[,] I think you can do it in a much softer manner that then it kind of paves the way for it to be where you've made the distinction if there was a need for one but you haven't made everyone mad as part of it and made it where the judge isn't even going to take the plea because of the victims being so enraged and that's always a gamble."  App. 77-78.

Moreover, the petitioner cannot show any prejudice.  With respect to guilty plea counsel, in order to satisfy the prejudice requirement, a petitioner must show that there is a reasonable probability that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 59.  The petitioner's counsel's testimony reflects that the burglary victims' unique jewelry box was recovered as the result of the information provided by the CI.  App. 67-68.  The assistant solicitor also stated at the guilty plea that the CI provided information that lead to the discovery of the jewelry box and to the petitioner's arrest.  App. 7.  Further, as pointed out by the respondent, the petitioner was indicted on the burglary charge.  *Cf. Gerstein v. Pugh*, 420 U.S. 103, 118 n. 19 (1975) ("the Court has held that an indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry. . . . The willingness to let a grand jury's judgment substitute for that of a neutral and detached magistrate is attributable to the grand jury's relationship to the courts and its historical role of protecting individuals from unjust prosecution") (citations omitted).  Based upon the foregoing, this ground for relief fails.

### Ground Four

The petitioner's remaining contention is that he received ineffective assistance of counsel because trial counsel permitted the Deputy Assistant Solicitor to make false statements at the guilty plea hearing. The petitioner testified in the PCR hearing that "[t]he fourth and final reason that I find Attorney Parrott was ineffective is the most important." He claimed that counsel "allowed [the] prosecutor to make false statements at the plea hearing." The petitioner complains regarding the Deputy Assistant Solicitor's statement at the plea that the petitioner had given a statement in connection with the case and that a unique, wooden jewelry box was recovered and identified by the victim. App. 7. He testified that counsel should have objected to these statements because he "never made a statement regarding the crime. No wooden jewelry box was ever recovered and there . . . [is] no documentation [of] either . . . the -- statements or the wooden box." App. 47-49. The petitioner further argued that the burglary victim's statement at the plea hearing that they "were not able to recover any of [their] items" (*see* App. 16) was further evidence of the falsity of the prosecutor's statement that the jewelry box was recovered. The petitioner claimed that counsel's failure to object was prejudicial because there was no evidence to support the Deputy Assistant Solicitor's statements and because "[t]he trial judge used this information to establish the factual basis of the plea, . . . making my plea not knowingly, intelligently given." App. 49.

It was counsel's testimony that the unique jewelry box was recovered as the result of the information provided by the CI. App. 67-68. Unlike the prosecutor, she had not spoken to the victims before the plea because she did not think interviewing them would do anything to help the petitioner but it could possibly aggravate or "inflame" them, which she never wants to do. "You could tell just by simple observation that those victims were very upset at everything that had occurred; that . . . they didn't like being victims. . . . [I]n fact, this is a elderly lady that was making the comments and I think rightly so for most

people she wanted to be safe in her own home, not have to worry about going into her home." App. 68-69. She explained that "I don't object during guilty pleas. I'm not trying to make the Court mad at what's going on. I'm not trying to make . . . the victims mad at what's going on. I'm trying to do . . . what can be done." If a distinction needs to be made between the State's representations and her client's position, whenever I'm given a chance to [speak] on behalf of my client[,] then I'll make the distinction." If there is only "just a slight discrepancy with part of what was offered or something like that because if it's substantive and it really goes to the heart of it then you address it. But if it's really just about whether or not somebody may have recovered something and the victims are there and can flat out address it and slam you back and you got nothing more than the person's words that's standing beside you, I don't know that you gain any ground in that." App. 70.

Counsel acknowledged that it might have possibly been helpful if items had been recovered. However, she thought the plea bargain that the petitioner received was the greatest benefit. "I don't think that you're ever going to get much more assistance than burglary first violent 15 to life down to burglary second nonviolent so that it's already two standards down. And you got a grand larceny down to a receiving stolen goods so that took him out of being the person who actually stole that." App. 69.

Again, the PCR judge found that this claim lacked merit and that the petitioner did not meet his burden of proof: "Applicant simply made [this] allegation[] without offering actual evidence that counsel's performance was ineffective. In addition, in the event that the Applicant could prove his allegations against counsel, he failed to prove that any such failures negatively impacted his case." App. 91.

This court agrees that the petitioner's allegation is not meritorious. First, the testimony of trial counsel is that the jewelry box was recovered. Thus, she perceived no misstatement by the prosecutor. Further, the victim's statement at the guilty plea that they were not able to recover any of their items does not necessarily imply the prosecutor made

a false statement since it appears that none of the other items taken in the burglary (such as money, guns and jewelry) were recovered.  Second, counsel's PCR testimony reflects that – consistent with her customary practice and strategy – even if she had perceived a misstatement by the Deputy Assistant Solicitor, she would not object unless the comments are "substantive and it really goes to the heart of [the case]."  Otherwise, there is the possibility that a response, in this case from the victims who were present at the plea, "can flat out address it and slam you back."  If there is "just a slight discrepancy with part of what was offered," she will address it when she speaks on her client's behalf.

Furthermore, the reference to the petitioner giving a statement is non-consequential where no contents of a statement were ever referred to by the State. South Carolina law requires that, "[t]o be valid, a guilty plea must be unconditional." *Easter v. State*, 584 S.E.2d 117, 119 (S.C. 2003).  So, counsel runs a risk that an objection to the statements of the prosecutor could undermine the guilty plea, which counsel clearly did not want to do because she had secured a very beneficial plea bargain on the petitioner's behalf.  Under these circumstances, the petitioner has failed to prove deficient performance by his counsel.

More importantly, there is no prejudice.  As argued by the respondent, the biggest obstacle to prevailing on this allegation that the petitioner faces is his own sworn statements at the guilty plea that he was guilty of the offenses, that he was entering the plea freely and voluntarily and that the prosecutor's comments were correct.  *See Allison*, 431 U.S. at 73-74.  In rejecting the PCR application, the PCR judge heavily relied upon the petitioner's representations to the trial court.  App. 93-94.  The petitioner's contrary PCR testimony does not suffice to overcome this obstacle.  Based upon the foregoing, this claim fails.

## **CONCLUSION**

Based upon the foregoing,

IT IS RECOMMENDED that the respondent's motion for summary judgment (doc. 18) be granted.

Furthermore, as this court finds that no good cause exists for discovery in this case (*see* Rules Governing § 2254 Cases, Rule 6),

IT IS ORDERED that the petitioner's motion for leave to conduct discovery (doc. 31) is denied.


s/Kevin F. McDonald
United States Magistrate Judge

November 15, 2010

Greenville, South Carolina